UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL JOE N.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-971 MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in not fully and fairly developing the record, failing to articulate sufficient reasons for not adopting the limitations set forth in the opinion of the State examining psychologist, evaluating his testimony, and assessing his physical and mental functional limitations at steps four and five. (Dkt. # 10 at 1-2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1984 and has a high school diploma. AR at 222, 227. He has worked as a caregiver, stocker, and an organizer in the manufacturing industry. *Id*. Plaintiff was last gainfully employed in 2010. AR at 227.

ORDER - 1

Plaintiff previously applied for Supplemental Security Income benefits which was denied after an ALJ hearing with a final decision on May 27, 2014. AR at 100-16. On March 20, 2015, Plaintiff applied again for benefits, alleging disability as of January 1, 2011.[1] AR at 158. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. AR at 153-56, 160-65, 167-69. Plaintiff was not represented by counsel at the ALJ hearing. AR at 19-31. After the ALJ conducted a hearing on May 23, 2017, the ALJ issued a decision finding Plaintiff not disabled. *Id*.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since November 3, 2014.

Step two: Plaintiff has the following severe impairments: major depressive disorder, posttraumatic stress disorder, anxiety disorder, cannabis abuse, polysubstance in remission, degenerative disc disease, obesity, left should impairment, localization-related seizure disorder, essential tremor, diabetes mellitus with polyneuropathy, polypoid sinusitis, and status post multiple inguinal hernia repair.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: Plaintiff can perform light work with some exceptions: he can frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch, and crawl, and occasionally reach overhead with his non-dominant left upper extremity. He must avoid concentrated exposure to vibrations and hazards, fumes, as well as odors, dusts, and gases, extreme heat and cold, and wetness. He can understand, remember, and carry out simple, routine tasks. He requires a stable and predictable work environment with no more than occasional, superficial contact with coworkers and the general public.

Step four: Plaintiff cannot perform past relevant work.

---

[1] The ALJ treated Plaintiff's alleged onset date of January 1, 2011 as a request to reopen his prior application. AR at 19. Because the ALJ concluded Plaintiff is not disabled, she declined to reopen the prior application. *Id.* The prior final decision of the Commissioner as to the issue of disability occurred on May 27, 2014, and thus the relevant period for this application began on May 28, 2014. AR at 20.
[2] 20 C.F.R. § 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

Step five: As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

AR at 22-30.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.     LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Fail to Adequately Develop the Record

Plaintiff argues that the ALJ erred by not fully developing the record, alleging she engaged in only a cursory examination of Plaintiff, failed to explore all the relevant facts, based her decision, in part, on State agency experts' opinions, and failed to order a consultative examination to assist in determining an RFC. (Dkt. # 10 at 4-7.) Plaintiff also argues that the ALJ had a heightened duty to develop the record because the evidence was ambiguous, Plaintiff was unrepresented, and Plaintiff suffers from severe mental impairments. (*Id.* at 5.) For the reasons discussed below, this Court finds that the ALJ adequately developed the record.

#### *1. Legal Standards*

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). When the claimant is unrepresented, the ALJ must be especially diligent in exploring for all the relevant facts. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (2001). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect his own interests. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan,* 242 F.3d at 1150. The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

allow supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288.

### *2.  The ALJ Fully Developed the Record*

Plaintiff argues the ALJ had a heightened duty to develop the record because Plaintiff was unrepresented, and further that it is unclear if he fully understood his right to representation. (Dkt. 10 at 5-6.) However, lack of representation alone is insufficient grounds for remand. *Hall v. Secretary of Health, Ed. and Welfare,* 602 F.2d 1372 (9th Cir. 1979). The notice of the ALJ hearing informed Plaintiff of his right to representation, and he was previously represented by counsel during the ALJ hearing for his previous application. AR at 36-74, 186. At the start of the May 23, 2017 hearing, the ALJ advised Plaintiff that he had the right to be represented by an attorney who would help him "obtain medical records, would explain legal, vocational, and medical terms to [him], would help determine whether they should request any additional testing, would help determine whether or not [he] needed any additional statements or witnesses on [his] behalf." AR at 78. The ALJ also advised Plaintiff that there were organizations that could provide him free legal advice. *Id*. She further provided Plaintiff with the option of postponing the hearing to obtain a representative. *Id.* Plaintiff confirmed that he understood his right to counsel and waived that right to continue with the hearing. *Id.*

Plaintiff argues that the ALJ ignored the examining psychologist's opinions that were contrary to the reviewing experts' opinions and therefore should have requested a consultative examination to resolve what Plaintiff alleges was ambiguous evidence. (Dkt. # 10 at 6.) However, the ALJ could reasonably conclude that the record did not include ambiguous evidence. As will be discussed below with regard to Plaintiff's claim that the ALJ erred by failing to adopt the State examining psychologist's opinion, the ALJ articulated legally adequate

reasons for rejecting his opinion. AR at 28. The ALJ relied on the State agency reviewing experts' opinions because they were consistent with the minimal observations of psychiatric concerns found in the medical records, the normal mental status examination findings, and Plaintiff's reported daily activities. *Id.*

One of the tools the ALJ has to develop the record is the ability to order a consultative examination, *i.e.,* "a physical or mental examination or test purchased for [a claimant] at [the Commissioner's] request and expense." 20 C.F.R. §§ 404.1519, 416.919. However, the Commissioner "has broad latitude in ordering a consultative examination." *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001) (quoting *Diaz v. Sec'y of Health and Human Servs.,* 898 F.2d 774, 778 (10th Cir. 1990)). Plaintiff has not demonstrated that the record was inadequate for the ALJ to make a disability determination and has not shown that the ALJ's decision to not obtain a consultative examination was harmful error, especially given the "broad latitude" afforded to the Commissioner.

Plaintiff also argues that the ALJ did not thoroughly exam Plaintiff to determine how his limitations affect his ability to work. (Dkt. # 10 at 6.) Plaintiff argues he was anxious throughout the hearing, often ended his statements with "and stuff," and was not asked about how often he went to class or had to leave class due to anxiety. (*Id.* at 6-7.) However, the ALJ's examination elicited testimony from Plaintiff that he attends college full-time, attends church weekly, and has volunteered at a food bank for up to five hours a day, seven days a week, for the last four years. AR at 82-83, 87-88, 91. The ALJ also questioned Plaintiff about his medications, therapy, and hernia surgeries. AR at 84-86. The ALJ gave Plaintiff the opportunity to further explain why he believes he is unable to work, however, he did not raise any additional impairments or

limitations. AR at 93. Plaintiff's testimony was sufficient for the ALJ to consider his mental and physical impairments, find them to be severe, and accommodate those limitations in the RFC.

Plaintiff also notes that the ALJ did not ask if he received a copy of his file or had a chance to review it, but fails to allege any prejudice from this omission or identify any potential missing records that Plaintiff could have brought to the ALJ's attention. (*Id.* at 6.) Further, the ALJ kept the record open after the hearing to order and obtain additional treatment records. AR at 98. The ALJ did secure additional records, exhibits B14F to B17F, which she proffered to Plaintiff in writing. AR at 305. She also informed Plaintiff that he could request a supplemental hearing to "appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law." *Id*. Plaintiff did not request such a hearing. AR at 19.

The ALJ could reasonably determine that record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Accordingly, the ALJ did not err by failing to develop the record.

**B.      The ALJ Did Not Err in Assessing Dr. Epp's Medical Opinions**

*1.      Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be

done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

*2.    Dr. Carl Epp, PhD*

The ALJ gave little weight to the 2013 and 2014 DSHS opinions of Carl Epp, Ph.D., finding the opinions inconsistent with Plaintiff's presentation during treatment appointments. AR at 28. The ALJ also found Plaintiff's statements to Dr. Epp regarding his limited activities inconsistent with his other reported activities. *Id*. Further, the evaluations were conducted before the relevant onset date. *Id.* The 2013 opinion was sufficiently analyzed in the ALJ decision regarding Plaintiff's prior application, which the ALJ adopted and incorporated in her decision. *Id.* While Dr. Epp's 2014 opinion was not addressed in the prior application, the ALJ found it consistent with his 2013 opinion. *Id.* Plaintiff argues that the ALJ erred in failing to articulate sufficient reasons for not adopting the limitations identified in Dr. Epp's opinions. (Dkt. # 10 at 10.)

Dr. Epp diagnosed Plaintiff with anxiety, dysthymia, posttraumatic stress disorder, and a learning disorder. AR at 317-18, 331. Dr. Epp reported Plaintiff's appearance was slovenly, and that it was unlikely he would be hired in any position other than an entry level, outdoor "dirty" occupation. AR at 310. He indicated Plaintiff would have either marked or severe limitations in performing activities with a schedule, maintaining appropriate behavior in a work setting, and communicating and performing effectively in a work setting. AR at 318, 332. He also found Plaintiff's work history indicated an inability to maintain employment. AR at 317.

The ALJ did not err by concluding that substantial evidence in the record shows Dr. Epp's opinions regarding Plaintiff's presentation and limited activities are inconsistent with the other medical records. For example, medical records describe Plaintiff as "[a]lert, oriented, informally dressed and groomed, pleasant, verbal and cooperative" (AR at 342) and "well groomed" (AR at 400). Other records have no mention of Plaintiff's appearance being slovenly.

AR at 325-26, 336-66, 369-81, 389-96, 398-401, 409-422. Records from Compass Health show that Plaintiff's limitations are not as limiting as Dr. Epp's findings. Several months before Dr. Epp's 2014 evaluation, Plaintiff denied depression, said he had "some mild anxiety," and reported volunteering at a food bank for thirty to forty hours a week. AR at 325-26. One month prior to that evaluation, Plaintiff reported "reconnecting with a former friend, play[ing] cards with friends weekly, and [ ] bowling a few times" as well as continuing to volunteer and completing a fork lift certification. AR at 363. As discussed above, Plaintiff also testified that he attended college full-time and went to church once a week with his mother. AR at 82-83, 91. The ALJ could find the inconsistencies between the record and Dr. Epp's opinions were specific and legitimate reasons for rejecting his opinions that are supported by the record.

### C. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

#### *1. Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. § 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

*Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the evidence in the record. AR at 26. Specifically, the ALJ identified five reasons for discounting Plaintiff's testimony in this case: (1) the minimal and mild physical examination findings found throughout the record are inconsistent with Plaintiff's allegations of extremely limiting conditions; (2) the regular notations in Plaintiff's treatment notes of minimal psychiatric observations are inconsistent with the allegations of extremely limiting mental health symptoms; (3) Plaintiff's performance on mental status examinations is inconsistent with his allegations of extremely limiting mental health symptoms; (4) Plaintiff's activities through the relevant period are inconsistent with his allegations of extremely limiting symptoms; and (5) Plaintiff's minimal engagement with treatment is inconsistent with his allegations of extremely limiting conditions and symptoms. AR

at 26-28. As discussed below, the Court finds the ALJ's reasons were clear, convincing, and supported by substantial evidence.

First, the ALJ rejected Plaintiff's testimony regarding his physical symptoms because it was inconsistent with the medical evidence. AR at 26. For example, the ALJ noted that during many medical appointments, Plaintiff's treating providers either did not document any discomfort or related concerns or explicitly documented he was in no apparent distress. *Id.* (citing AR at 430, 437, 441, 494, 502, 513, 520, and 536). Further, while Plaintiff has some positive findings related to his back, there was no atrophy and he presented with normal strength and sensation. *See e.g.* AR at 373, 377, 380, 400, 410, 415, 418, 430, 441. The ALJ also found Plaintiff's physical impairments regarding his hernias were temporary, and documented prior to surgical repairs. AR at 26. In light of the fact providers did not note pain behavior during a significant number of Plaintiff's medical appointments, the ALJ could reasonably conclude that the "absence of such observations is inconsistent with the claimant's allegations of extremely limiting pain and constant symptoms." AR at 26-27. Inconsistencies with the medical evidence was a clear and convincing reason for the ALJ to find Plaintiff's testimony regarding his physical symptoms less than fully credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Similarly, the ALJ found that Plaintiff's allegations related to his mental symptoms were inconsistent with the medical evidence. AR at 27. For example, while treating mental health professionals noted some psychiatric symptoms, he presented as appropriate, pleasant, and cooperative. AR at 400, 402, 430, 441, 450, 467, 482, 502, 525, and 536. During other medical appointments, providers observed no notable psychiatric symptoms and Plaintiff often denied having concerns regarding his psychiatric conditions. AR at 398, 449, 493, 513, 519, 524, 536,

and 573. The ALJ also cited to a large gap in his mental health treatment.[4] AR at 27. Inconsistencies with the medical evidence was a clear and convincing reason for the ALJ to find Plaintiff's testimony regarding his mental symptoms less than fully credible. *See Bray*, 554 F.3d at 1227.

Finally, the ALJ found that Plaintiff's "activities throughout the relevant period are inconsistent with his allegations of extremely limiting symptoms." *Id.* As discussed above, Plaintiff testified that he attends college full-time and church weekly. AR at 82-83, 91. He also testified that for the past four years, he has spent up to seven days a week, up to five hours a day, volunteering at a food bank. AR at 87-88. He testified that when he volunteers, he lifts sixty-pound boxes of canned food. AR at 88. He also reported to mental health providers that he supervised others one day a week at the food bank. AR at 554. Inconsistencies between Plaintiff's testimony and his daily activities was a clear and convincing reason for the ALJ to find Plaintiff's testimony less than fully credible. *Bray,* 554 F.3d at 1227 ("an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). Accordingly, Plaintiff has not shown that the ALJ erred in evaluating his subjective complaints.

### D. The ALJ Did Not Err in Assessing Plaintiff's RFC or at Step Five

Plaintiff argues the ALJ erred at steps four and five because she did not fully develop the record, erred in assessing the medical opinion evidence and Plaintiff's testimony, and made an incomplete RFC determination thereby making the hypothetical question to the vocational expert incomplete. (Dkt. # 10 at 11-13.) As discussed above, the ALJ adequately developed the record, did not err in assessing the medical opinion evidence, and her reasons for discounting Plaintiff's

---

[4] The ALJ noted there are factors that may mitigate treatment gaps. However, the ALJ found that Plaintiff failed to identify any reasons that would justify his treatment gap in this case. AR at 27-28.

testimony were clear, convincing, and supported by substantial evidence. Because the Court has affirmed the findings of the ALJ as to Plaintiff's prior assignments of error, it must also conclude that there was no error in determining Plaintiff's RFC or relying upon that RFC at step five. Plaintiff has pointed to no credible evidence establishing the additional limitations that he believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting additional limitations from the RFC assessment. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work related impairments).

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 5th day of April, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge